# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3593

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| James Luvene, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: March 13, 2001
Filed: April 2, 2001

_____

Before MURPHY, LAY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Luvene was found guilty by a jury of conspiracy to possess with the intent to distribute and to distribute over 50 grams of crack cocaine and also of aiding and abetting another in possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2. The district court[1] sentenced Luvene to 151 months, and he appeals from the judgment. We affirm.

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

On April 13, 2000, Luvene was arrested after his involvement in a sale of crack cocaine to Minneapolis undercover police officer Kevin Angerhofer. Earlier that evening Angerhofer had received information from a woman arrested for selling heroin that Luvene and Bryant Cribbs were crack dealers. She agreed to arrange a drug deal with them. The informant made three taped telephone calls to Luvene and Cribbs. In the first call she told Luvene that she wanted to buy 4 ½ grams of crack for $4,500. She later arranged to meet Cribbs in the parking lot of a hotel. Angerhofer drove with her to the hotel lot where she joined Luvene and Cribbs in Luvene's car while Angerhofer waited in his unmarked vehicle. Angerhofer testified that through his open window he could hear the others discussing the crack deal since a window in Luvene's car was also partially open. An agreement was reached, and Luvene and Cribbs told the informant and Angerhofer to wait in the parking lot until they returned. Surveillance officers followed Luvene and Cribbs to their apartment, where the two remained for approximately twenty minutes.

Luvene dropped Cribbs off elsewhere before driving back to the hotel lot where he told Angerhofer that his friend had the crack at another location and that Angerhofer should follow him there. Angerhofer expressed concern that Luvene was trying to cheat him, and Luvene said "No, no. We're not trying to rip you off." Angerhofer told Luvene that he wanted to hold the crack to determine its quality. Luvene answered, "That's not a problem, you can make sure it's good." Luvene then drove to the house where he had left Cribbs, and Angerhofer parked directly behind him. Luvene made a call on his cell phone, and Cribbs came out and walked over to Angerhofer's vehicle where the informant took the crack from Cribbs and passed it to Angerhofer. He then signaled waiting officers to arrest Cribbs and Luvene.

Luvene was searched after he was arrested. He was carrying a key to the apartment he shared with Cribbs, $295 in small denominations, and a cell phone. Officers obtained a search warrant for the one bedroom apartment. The officers found crack in a black backpack and in a jacket, a triple beam scale on the kitchen counter

with crack residue on its balance, small plastic bags, another scale with razor marks and cocaine residue in the dining room, $900 cash in an unlocked safe in the bedroom closet, a bulletproof vest, ammunition, and a Glock pistol case.

Cribbs and Luvene were charged jointly, but several days before trial Cribbs pled guilty. Cribbs testified during his plea colloquy that both he and Luvene had possessed the crack with the intent to distribute it, and that they had conspired to do so.

Before trial Luvene hired an investigator to locate the informant. Counsel mentioned at oral argument that the investigator had talked to her on the phone, and Luvene himself had a telephone conversation with her. The investigator also spoke to members of her family, but he was not able to learn where she was. The government disclosed its witness list the week before trial, and the informant's name was not on it.

On the day before trial Luvene moved in limine, asking the court to order the government to disclose the location of the informant. The court told the government to disclose that information and offered Luvene a continuance if he should require more time to locate the informant. Luvene did not pursue the court's offer, however. After the government turned over the informant's name and last known address, Luvene complained to the court that she was no longer there and that the government must have additional undisclosed information. He requested an absent witness instruction. The court ordered the government to turn over all the information that it had on the informant, including phone numbers, and ruled that Luvene was not entitled to an absent witness instruction because of the untimeliness of his discovery request. The court inspected the government files in camera and found no undisclosed matter on the informant.

Luvene indicated he wanted to question Angerhofer about the whereabouts of the informant, and the court held an evidentiary hearing for that purpose. Angerhofer

testified that the informant had called him the week after Luvene's arrest to ask if she would be subpoenaed. She told Angerhofer that she would not appear in court if she were subpoenaed and implied that she was afraid of being physically harmed. She refused to meet with Angerhofer, but gave him a telephone number in Chicago. Later it was discovered that she could not be reached at that number. Angerhofer had no other phone number or address for her.

Luvene's theory of defense at trial was mere presence, and he testified before the jury. Neither Cribbs nor the informant testified. The jury found Luvene guilty on both counts. The court calculated his sentencing range at 151-188 months and sentenced him at the low point of the range.[2] On appeal Luvene asks that his conviction be reversed, arguing that his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process were violated when the government failed to inform him of the location of the informant and that the district court abused its discretion by not giving an absent witness instruction.

Luvene claims that the informant's testimony was important to his case because it would have shown that the drug negotiation was between her and Cribbs and that Luvene was merely present during their discussion. He claims that her testimony would have been especially important because Angerhofer's version at trial about what happened when the informant got into the car with Luvene and Cribbs differed from his police report and from Luvene's testimony. The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. The right to

---

[2]Luvene was assigned a base offense level of 32 for possession of between 50 and 150 grams of crack cocaine. See U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(4). The district court found that Luvene testified falsely when he denied involvement in the drug transaction and applied a two level enhancement for obstruction of justice. See id. at § 3C1.1.

compulsory process is not absolute. Both the Sixth Amendment compulsory process and the Fifth Amendment due process clauses require that a defendant show that the witness "testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 872 (1982). Material testimony is testimony that might affect the outcome of the trial. See id. at 868.

There was ample evidence at trial that Luvene was involved in the drug transaction. The informant's initial telephone contact was with Luvene when she told him that she wanted to buy crack, Luvene and Cribbs went together to their apartment before producing the crack, Luvene led Angerhofer and the informant to the site where the crack was to be turned over, and assured Angerhofer that "*We're* not trying to rip you off." The search of the one bedroom apartment revealed crack, drug paraphernalia, and large amounts of money. Luvene carried a key for the apartment, and his name was on the mailbox. He had an opportunity to cross examine Angerhofer, and the jury chose to believe Angerhofer's version of what happened rather than his. In light of all the evidence against Luvene, the informant's testimony was not material to his defense. See Perry v. Lockhart, 871 F.2d 1384, 1388 (8th Cir. 1989). He has not shown a violation of the compulsory process or due process clauses.

We review the denial of Luvene's motion for an absent witness instruction under an abuse of discretion standard. See United States v. Johnson, 562 F.2d 515, 517 (8th Cir. 1977) (per curiam). This type of instruction tells the jury that the government's failure to call a witness "peculiarly within its power to produce" may give rise to the inference that the witness would have given testimony unfavorable to the government and need not be given unless the defendant shows that the government possesses the sole power to produce the witness. See id.

Luvene has not shown that the informant was peculiarly within the government's power to produce. Luvene alleges that the government was responsible for her unavailability and speculates that her refusal to testify was from fear of being charged

for heroin possession rather than from fear of being harmed by Luvene or his friends.[3] Angerhofer's testimony, that the informant implied she would be afraid to testify and that she gave him a non-working Chicago phone number, was unrebutted and supports the government's argument that it had no control over the informant. Angerhofer's only face to face contact with the informant was on the day of Luvene's arrest. Luvene knew the identity of the informant and was acquainted with her and her family. He was aware the week before trial that the government did not plan to call the informant to testify, and he waited until the day before trial to ask for disclosure of information about her whereabouts. The court arranged for the government to give him the information, and it conducted an in camera review of the prosecutor's file and an evidentiary hearing. It also offered Luvene a continuance so that he could try to locate her, but Luvene did not pursue the offer. Luvene has not shown that the government had sole power to produce the informant, and the district court did not abuse its discretion in declining to give an absent witness instruction.

For these reasons, we affirm the judgment of the district court.

---

[3]Luvene now argues that the government should have used its influence with the informant to persuade her to testify, but he never asked the government to attempt to produce the witness. In any event there was sufficient evidence for the jury to find Luvene guilty even if the informant would have given the testimony he has hypothesized.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.